**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Meghan Draper Hiller, | No. CV-22-00554-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, | |
| Defendant. | |

Before the Court is Arizona Board of Regents' ("ABOR") Motion to Dismiss ("MTD") (Doc. 12) Meghan Hiller's Complaint (Doc. 1). The MTD is fully briefed, (*see* Docs. 20–21), and oral argument was held on October 6, 2022. After considering the parties' arguments and relevant law, the Court will grant the MTD for the reasons set forth below.

**I. BACKGROUND**

Hiller sued ABOR for discrimination under Title II of the Americans with Disability Act ("ADA"), and state law claims for breach of contract, negligence, negligent supervision, and intentional infliction of emotional distress. (Doc. 1 at 11–13.) Hiller concedes ABOR did not waive its sovereign immunity or consent to this Court's jurisdiction over the state law claims. (Doc. 20 at 1.) The Court will thus address only Plaintiff's Title II claim, which ABOR argues must also be dismissed. (*See* Docs. 12, 20–21.)

**A. The Complaint**

In 2016, Plaintiff began a Master of Interior Architecture ("MIA") program at Arizona State University ("ASU").  (Doc. 1 at 2 ¶ 10.)  ASU granted Plaintiff disability accommodations for her migraines, vision issues, and complex post-traumatic stress disorder.  (*Id.* at 3 ¶ 14.)  ASU accommodated Plaintiff with "flexible assignment deadlines, flexible attendance, and access to larger-print course materials or a monitor for ease of reading."  (*Id.* ¶ 15.)  Additionally, instructors were informed that:

> Medication side effects or flare up of the disability may cause an interruption in the student's ability to complete projects in a timely manner. . . . Delays due to flare up may trigger a request for modified assignment deadlines or a grade of incomplete, to provide the student the opportunity to fully demonstrate course accomplishment and maintain GPA.

(*Id.* ¶ 16.)  Plaintiff alleges that because her migraines worsened during the Spring and Fall 2020 semesters, particularly due to virtual learning, she began the Spring 2021 term with several incomplete courses from both semesters.  (*Id.* ¶ 18.)

Before Spring 2021 began, Plaintiff alleges she contacted the professors of her incomplete courses to arrange their completion.  (*Id.* at 4 ¶ 20.)  Plaintiff also alleges she spoke with her Spring 2021 professors about "her past bad experiences with the 'Revit' software package, describing herself as 'nearly phobic'; about her disability accommodations; and about how Zoom often caused or worsened her migraine symptoms."  (*Id.*)

Plaintiff faced more adversity during the Spring 2021 semester.  In February 2021, Plaintiff claims she experienced issues with a computer crash, the Revit software ("Revit"), and a change to her vision prescription.  (*Id.* ¶ 21.)  Plaintiff contends she fell behind in her Construction Documents class because of her prescription change and the expense of expediting new glasses.  (*Id.* ¶ 23.)  Plaintiff then asked that her Construction Documents professor grant her an incomplete grade in the course, which would have allowed her to complete the class at her own pace.  (*Id.*)  Plaintiff alleges her professor was willing to discuss a plan for course completion.  (*Id.*)  That following month, Plaintiff described her struggles to the head of her program and her disability coordinator.  (*Id.* ¶ 24.)  Plaintiff

1    sought an accommodation to further extend incomplete courses from Spring 2020 so she

2    could focus on her Spring 2021 studio course.  (*Id.*)  Plaintiff alleges she was told there

3    was no specific process for requesting such an extension, and that it was "100% the

4    instructor's decision."  (*Id.* at 5 ¶ 24.)  After speaking with her professor, Plaintiff believed

5    she could receive an incomplete grade in Construction Documents, familiarize herself with

6    Revit at her own pace, and then complete the course during summer.  (*Id.* ¶ 25.)

7         On April 1, 2021, the disability coordinator emailed Plaintiff indicating the

8    department would approve any additional incompletes or extensions.  (*Id.* ¶ 26.)  The email

9    also stated that Dean Woodson was "aware of the situation."  (*Id.*)  Relying on the granted

10   extensions, Plaintiff "took a three-day weekend off to rest and to celebrate her birthday

11   with her family."  (*Id.* ¶ 27.)  But later that day, the disability coordinator sent a recall

12   notice on the April 1 email for an undisclosed error, and then sent a second, revised email.

13   (*Id.* ¶ 28.)  The amended email stated the department would *not* approve any additional

14   incompletes or extensions. (*Id.* ¶ 29.)

15        Plaintiff received an email the following week from her Construction Documents

16   professor who wrote that after speaking with the disability coordinator and administration,

17   he could no longer approve an incomplete in the course—only extensions on past

18   assignments until April 30.  (*Id.* at 5–6 ¶ 30.)  The professor also wrote that he would grade

19   nothing after May 10.  (*Id.* at 6 ¶ 30.)  Plaintiff alleges that moments later she received a

20   "condescending and hostile" call from Dean Woodson.  (*Id.* ¶ 31.)  Plaintiff alleges that the

21   Dean accused her of "playing the system," told Plaintiff she was "not special," had "no

22   business" being in the MIA program, had too many incompletes and would be granted no

23   others, and stated they could "get rid of any incomplete I want" by turning the grade into

24   an "F."  (*Id.* ¶¶ 32–33.)

25        Plaintiff alleges the Dean ignored her when she explained most of her incompletes

26   were near completion.  Furthermore, Plaintiff alleges that when she told the Dean how

27   "many of her incompletes were because of struggling to deal with the impact of Covid-

28   19," the Dean responded, "lots of people have a hard time with Covid," and that Plaintiff

1    should medically withdraw.  (*Id.* ¶ 35.)  Plaintiff also alleges the Dean demanded she

2    submit a plan for completing her incomplete courses and current 2021 classes by the end

3    of the semester.  (*Id.* at 6–7 ¶ 36.)  Plaintiff alleges she "warned" the Dean that "this

4    situation was untenable and damaging for her."  (*Id.* at 7 ¶ 36.)  Finally, Plaintiff contends

5    that the Dean prohibited her from receiving more incompletes or extended deadlines on

6    existing incompletes—contrary to some of her professor's prior approval for extensions.

7    (*Id.* ¶¶ 37–38.)

8            Plaintiff alleges she satisfied the Dean's "unreasonable demands for planning and

9    communication, as well as the unnecessary and harmful deadlines imposed" that had no

10   "basis in ASU's academic policies."  (*Id.* at 8 ¶ 46.)  Furthermore, Plaintiff alleges that

11   compliance placed her under "substantial stress" that "interfered with both her physical and

12   mental wellbeing and her ability to spend time with her young daughter."  (*Id.* ¶ 47.)

13           Plaintiff alleges the following harms as a result of the Dean's denial of her extension

14   requests: (1) interference with Plaintiffs' ability to select an internship during the Summer

15   2021 semester; (2) prohibition from enrolling in a Summer 2021 elective of her choice; (3)

16   the Dean's attempts to force Plaintiff to enroll in an elective that she notified would be

17   "emotionally harmful"; (4) Plaintiff's accommodations were denied without ASU policy

18   justification; and (5) lost time resolving the summer enrollment issue.  (*Id.* ¶¶ 48–51.)

19   Plaintiff alleges that when she asked her disability coordinator to intervene, she was told

20   "her accommodations were for flare-ups, not because [Plaintiff] simply wanted to focus on

21   something else."  (*Id.* at 9 ¶ 54.)

22           Ultimately, Plaintiff asserts the Dean prevented willing instructors from granting

23   her extensions and incompletes without ASU policy justifications, and that "[a]ny non-

24   disabled individual in [Plaintiff's] position—which is to say, struggling with courses

25   during the Covid-19 pandemic—would have been permitted to receive any number of

26   incompletes with instructor permission, and would similarly have been permitted to extend

27   any number of existing incompletes with instructor permission."  (*Id.* at 7 ¶¶ 38–40.) Thus,

28   Plaintiff alleges the Dean "manufactured the limitations" on Plaintiff due to "antipathy"

- 4 -

1    towards her "insistence on utilizing her already-approved disability accommodations,"—

2    therefore denying her accommodations "**because** of her disability status." (*Id.* ¶¶ 41–42.)

3         Plaintiff alleges that although she submitted her Spring 2021 and incomplete

4    coursework on-time and graduated, she has been unable to secure employment. (*Id.* at 9

5    ¶¶ 55–56.)  Among other things, Plaintiff attributes her inability to secure employment to

6    rushing though her assignments and Revit to meet the Dean's deadlines, being denied the

7    opportunity to take an internship during Summer 2021 due to the imposed deadlines, and

8    feeling "exhausted, discouraged, and in need of recovery time" following the Summer 2021

9    term before seeking employment. (*Id.* at 10 ¶ 58.)

10        ABOR moves to dismiss Plaintiff's Title II claim arguing that the Eleventh

11   Amendment precludes her claim.

12   **II. LEGAL STANDARDS**

13        Title II states "no qualified individual with a disability shall, by reason of such

14   disability, be excluded from participation in or be denied the benefits of the services,

15   programs or activities of a public entity, or be subjected to discrimination by any such

16   entity." 42 U.S.C. § 12132.  Under the Eleventh Amendment, Plaintiff may only bring a

17   federal statutory claim against ABOR, an arm of the state, if either Congress validly

18   abrogated state sovereign immunity, or either Arizona or ABOR waived sovereign

19   immunity. *See Alden v. Maine*, 527 U.S. 706, 755–56 (1999).  The Eleventh Amendment

20   provides that "[t]he judicial power of the United States shall not be construed to extend to

21   any suit in law or equity, commenced or prosecuted against one of the United States by

22   Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. CONST.

23   amend. XI.  Neither Arizona nor ABOR has waived sovereign immunity for federal

24   damages liability. *See Redgrave v. Ducey*, 493 P.3d 878, 885 (Ariz. 2021); *see also Ronwin*

25   *v. Shapiro*, 657 F.2d 1071, 1073–74 (9th Cir. 1981).

26        However, as the Supreme Court has noted, Title II of the ADA contains an

27   "unequivocal expression of Congress's intent to abrogate state sovereign immunity."

28   *United States v. Georgia*, 546 U.S. 151, 154 (2006).  Specifically, "insofar as Title II

1    creates a private cause of action for damages against the States for conduct that *actually*

2    violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."

3    *Id.* at 159.  To make this determination, the Court must consider on a claim-by claim-basis:

4        (1) which aspects of the State's alleged conduct violated Title II; (2) to what
    extent such misconduct also violated the Fourteenth Amendment; and (3)

5        insofar as such misconduct violated Title II but did not violate the Fourteenth

6        Amendment, whether Congress's purported abrogation of sovereign
    immunity as to that class of conduct is nevertheless valid.

7    *Id.*

8        "The second and third steps of the analysis need only be considered if a plaintiff has

9    a viable claim under step one."  *Castle v. Eurofresh, Inc.*, No. CV 09-8114-PCT-MHM,

10   2010 WL 797138, at \*11 (D. Ariz. Mar. 8, 2010).

11             **A. *Georgia* Step 1**

12       Under *Georgia*'s first step, to state a claim under Title II Plaintiff must generally

13   demonstrate:

14       (1) she is an individual with a disability; (2) she is otherwise qualified to
    participate in or receive the benefit of a public entity's services, programs or

15       activities; (3) she was either excluded from participation in or denied the

16       benefits of the public entity's services, programs or activities or was
    otherwise discriminated against by the public entity; and (4) such exclusion,

17       denial of benefits or discrimination was by reason of her disability.

18   *Reed v. City of Emeryville*, 568 F.Supp.3d 1029, 1041 (N.D. Cal. 2021) (quoting *Sheehan*

19   *v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*,

20   *City & Cnty. of S.F., Cal. v. Sheehan*, 575 U.S. 600 (2015)).  *See also Castle*, 2010 WL

21   797138, at \*11 (District Court Judge applying *Georgia* to a Title II ADA claim at the

22   motion to dismiss stage).

23             **B. *Georgia* Step 2**

24       Step two considers whether the alleged misconduct violates the Fourteenth

25   Amendment.  In relevant part, it states:

26       No State shall make or enforce any law which shall abridge the privileges or
    immunities of citizens of the United States; nor shall any State deprive any

27       person of life, liberty, or property, without due process of law; nor deny to

28       any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. The Supreme Court has held individuals have no fundamental right to higher education. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973) ("We have carefully considered each of the arguments supportive of the District Court's finding that education is a fundamental right or liberty and have found those arguments unpersuasive."). For a plaintiff to show a constitutionally protected property interest in their education, it must be conferred by state law. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). Arizona law confers no property interest in higher education. *See Schwake v. Ariz. Bd. of Regents*, 8221 F. App'x 768, 770 (9th Cir. 2020) (finding plaintiff "failed to identify any basis pursuant to Arizona law" instilling property rights or liberty interests in public higher education); *see also Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2019 WL 7282027, at *10 (D. Ariz. Dec. 27, 2019) (finding there is no property right to attend ASU under Arizona law).

### C. *Georgia* Step 3

The final step of the *Georgia* analysis considers whether Title II validly abrogates sovereign immunity as to the "class of conduct" alleged. *Georgia*, 546 U.S. at 159. "[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (cleaned up). Section 5 states that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5. Therefore, if Congress validly exercises § 5, it may "subject nonconsenting States to suit in federal court." *Garrett*, 531 U.S. at 364. The Fifth Circuit has described the § 5 analysis as follows:

> [i]nsofar as it prohibits conduct that does not directly violate the Fourteenth Amendment, Title II can abrogate sovereign immunity only where Congress's abrogation power is "nevertheless valid." Congress's abrogation power is "nevertheless valid" where Title II imposes requirements that are "congruent and proportional" to an identified "pattern of [unconstitutional] exclusion and discrimination"—even if it sweeps in some conduct that is not itself unconstitutional.

1    *Pickett v. Texas Tech. Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1026 (5th Cir. 2022) (quoting

2    *Georgia*, 546 U.S. at 159; *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)).

3    **III. DISCUSSION**

4    **A. *Georgia* Applies**

5    Plaintiff cites to the Ninth Circuit's reliance on a pre-*Georgia* case, *Phiffer*, to assert

6    that Congress abrogated sovereign immunity under Tile II of the ADA.  *See Phiffer v.*

7    *Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004) ("Our precedent clearly

8    commands the conclusion that the State is not entitled to Eleventh Amendment immunity

9    under Title II of the ADA.").  The Ninth Circuit continues to cite to *Phiffer* as controlling

10   law despite the Supreme Court guiding to the contrary in *Georgia*, *Lane*, and *Garrett*.  *See,*

11   *e.g.*, *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012) (citing *Phiffer* when stating "Title

12   II abrogates a state's Eleventh Amendment immunity"); *Daniel v. Levin*, 172 F. App'x 147,

13   179 (9th Cir. 2006) (citing *Phiffer* when finding "the Eleventh Amendment does not bar

14   ADA or [Rehabilitation Act] suits against state officials in their official capacities for

15   injunctive relief or damages"); *Karam v. Univ. of Ariz.*, No. 18-CV-00455-TUC-RCC,

16   2019 WL 588151, at \*4 (D. Ariz. Feb. 13, 2019) (citing *Phiffer* when noting "[t]he Ninth

17   Circuit has clearly determined that Congress validly abrogated state's immunity under Title

18   II of the ADA").   However, none of the above cases engage in any analysis and while it is

19   true that *Phiffer* stands for the general proposition that a state is not entitled to immunity

20   under Title II of the ADA, *Georgia* makes it clear that immunity is lost only if there is an

21   actual violation of the Fourteenth Amendment.

22   Additionally, even pre-*Georgia*, the *Phiffer* concurrence noted that it remained

23   undecided whether "Title II validly abrogates state sovereign immunity where no such

24   fundamental right is at issue."  384 F.3d at 793 ("[E]ven after *Tennessee v. Lane*, . . . a

25   palpable tension continues to exist between our circuit's sovereign immunity jurisprudence

26   and the Supreme Court's guidance on this issue. . . . Because *Dare* and *Clark* upheld the

27   entirety of Title II without engaging in the nuanced, case-by-case analysis demanded by

28   *Lane*, their continued vitality is uncertain.") (cleaned up).

1    Here, neither the U.S. Constitution nor Arizona law confer a fundamental right,

2   property right, or liberty interest in higher education.  Post-*Phiffer*, the Supreme Court in

3   *Georgia* provided a test to determine a state's sovereign immunity in this context.  And as

4   the Ninth Circuit recognizes, "[a] decision of the Supreme Court will control that corner of

5   the law unless and until the Supreme Court itself overrules or modifies it."  *Hart v.*

6   *Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).  This Court will therefore engage in the

7   *Georgia* analysis.

8                        **B. Plaintiff's claim does not satisfy *Georgia***

9           Plaintiff's allegations fail to satisfy step one of *Georgia*'s three-step analysis.

10  Plaintiff claims ABOR violated Title II of the ADA by denying her requests to receive an

11  incomplete grade in her Construction Documents class or further extend incomplete

12  courses from prior semesters.  Plaintiff successfully alleges that she had a registered

13  disability with ASU, had been receiving disability accommodations, and was working

14  towards graduation at the time of the alleged incident.  Factors one and two are therefore

15  satisfied and ABOR concedes the first two factors.  (Doc. 21 at 5.)

16          However, the Court finds Plaintiff did not satisfy the third factor.  Even after

17  Plaintiff was denied further incomplete grades and extensions, Plaintiff submitted her

18  assignments on time and then graduated.  Plaintiff thus does not allege being excluded from

19  or denied the benefits of the MIA program.  Furthermore, Plaintiff admits she received a

20  vast number of extended deadlines and incomplete grades over the duration of her program.

21  The Complaint singles out the first and only time ASU denied her an incomplete grade and

22  extension request.  At no point does Plaintiff allege that because of her disability, ASU was

23  responsible for granting every accommodation request.  *Cf. Del Conte v. Cnty. of Santa*

24  *Clara*, No. 14-CV-05334-WHO, 2016 WL 3916315, at *3 (N.D. Cal. July 20, 2016)

25  (noting that under the ADA, plaintiffs must make a showing of causation between the

26  disability and excluding act, and that "[n]o claim is pleaded by alleging simply that because

27  he was denied medication, it must have been because of his disability").  As such, factor

28  three is not satisfied.

1      Plaintiff also fails to allege ASU denied her requests because of her disability.

2   Plaintiff instead alleges many reasons unrelated to her disability for seeking the denied

3   accommodations, including: (1) COVID-19; (2) computer issues; and (3) a desire to focus

4   on her studio course.   In fact, Plaintiff concedes she told the Dean that "many of her

5   incompletes were because of struggling to deal with the impact of Covid-19"—not her

6   disability. (Doc. 1 at 6 ¶ 35.)  *See Okere v. City. of Dall.*, No. 3:19-CV-2339-M-BN, 2020

7   WL 1479765, at *3 (N.D. Tex. Feb. 26, 2020) (granting a motion to dismiss and noting

8   that although a plaintiff need not "plead a prima facie case of disability discrimination

9   under Title II of the ADA . . . the complaint must include facts that allow the Court to infer

10  more than the mere possibility of disability discrimination").   Plaintiff's assertion that ASU

11  denied her accommodations "***because*** of her disability status," alone is merely a legal

12  conclusion, and the Court does not find enough factual allegations to support it.  (Doc. 1 at

13  7 ¶¶ 41–42.)  *See Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (courts

14  will "not accept *legal conclusions* in the complaint as true, even if cast in the form of factual

15  allegations") (cleaned up).   Factor four is therefore not satisfied.

16      Because Plaintiff has failed to satisfy step one, the Court need not engage in steps

17  two and three of the *Georgia* analysis. *See Castle*, 2010 WL 797138, at *11.  But even

18  assuming Plaintiff satisfied step one, the Court finds no Fourteenth Amendment violation

19  because, as explained above, Arizona law confers no property interest in higher education.

20  *See Schwake*, 8221 F. App'x at 770.   In fact, Plaintiff makes no attempts to argue there is

21  a Fourteenth Amendment violation and fails to respond to ABOR's arguments to the

22  contrary. (Docs. 1, 20.)  *See Williams v. Metro. Water Dist.*, No. CV-21-00030-PHX-

23  DWL, 2021 WL 1817052, *2 (D. Ariz. May 6, 2021) (noting that plaintiff's failure to

24  respond to defendant's arguments for dismissal is "tantamount to a concession that

25  dismissal is warranted" on that basis).

26      Plaintiff also fails step three.  With no Fourteenth Amendment violation, the Court

27  must consider whether Title II validly abrogates sovereign immunity as to the "class of

28  conduct" alleged in the complaint.  *Georgia*, 546 U.S. at 159.  This analysis requires a

1   determination of whether Title II's requirements are "congruent and proportional" to the

2   Complaint's alleged "pattern of [unconstitutional] exclusion and discrimination." *Pickett*,

3   37 F.4th at 1026.  Here, Plaintiff fails to allege her disability led to a pattern of exclusion

4   and discrimination.  Plaintiff's Complaint details numerous accommodations ASU granted

5   her and alleges the first and only time ASU denied her an accommodation.  Furthermore,

6   Plaintiff is not a member of a protected class and possesses no fundamental right to higher

7   education.  "[I]ndividuals with disabilities do not qualify as a 'suspect class' of persons

8   under the Equal Protection Clause of the Fourteenth Amendment." *Serrano v. Francis*,

9   345 F.3d 1071, 1079 n.6 (9th Cir. 2003) (citation omitted).  It follows that under the Equal

10  Protection rational basis test, "States are not required by the Fourteenth Amendment to

11  make special accommodations for the disabled, so long as their actions towards such

12  individuals are rational. . . . If special accommodations for the disabled are to be required,

13  they have to come from positive law and not through the Equal Protection Clause." *Bd. of*

14  *Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001).

15        Title II does not validly abrogate sovereign immunity here because it is "so out of

16  proportion to a supposed remedial or preventive object that it cannot be understood as

17  responsive to, or designed to prevent, unconstitutional behavior." *Guttman v. Khalsa*, 669

18  F.3d 1101, 1122, 1124 (10th Cir. 2012) (pointing out "a trend of courts holding that, absent

19  the need to vindicate a fundamental right or protect a suspect class, Congress may not

20  abrogate state sovereign immunity") (cleaned up).

21        **IV. DISMISSED WITH PREJUDICE**

22        "[A] district court should grant leave to amend even if no request to amend the

23  pleading was made, unless it determines that the pleading could not possibly be cured by

24  the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned

25  up).  Plaintiff's Complaint does not satisfy *Georgia*'s requirements, and thus no factual

26  amendment could cure the Court's lack of jurisdiction.  Plaintiff's Title II claim will

27  therefore be dismissed with prejudice.  Plaintiff's remaining state law claims are dismissed

28  without prejudice.

1

**V. CONCLUSION**

2

Accordingly,

3

**IT IS ORDERED** granting Defendant's MTD and directing the Clerk of Court to

4

terminate this case.  (Doc. 12.)

5

**IT IS FURTHER ORDERED** dismissing Plaintiff's Title II claim with prejudice

6

and all remaining state law claims without prejudice.

7

Dated this 14th day of October, 2022.

8

9

10

Honorable Susan M. Brnovich
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28